NAACP, Plaintiff,

Phillip Paradise, Jr., Individually and on behalf of the class similarly situated, Intervening Plaintiff,

United States of America, Plaintiff and Amicus Curiae,

v.

Walter L. ALLEN, as Director of the Alabama Department of Public Safety, his agents, assigns, and successors in office, Stanley Frazer, as Personnel Director, Personnel Dept., State of Alabama, his agents, assigns, and successors in office, Defendants.

UNITED STATES of America by John N. MITCHELL, Attorney General, Plaintiff,

v.

John S. FRAZER, as Director, Alabama Personnel Department, et al., Defendants.

Civ. A. Nos. 3561–N, 2709–N.

United States District Court, M. D. Alabama, N. D.

Feb. 10, 1972.

Supplemental Opinion March 24, 1972.

---

8. See n. 4 and n. 7, *supra*.

Morris S. Dees, Jr., and Joseph J. Levin, Jr., Montgomery, Ala., for plaintiff and intervening plaintfif.

Ira DeMent, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., M. D. of Ala., Montgomery, Ala., Douglas Huron, Civil Rights Div., of Justice, Washington, D. C., for the United States.

William J. Baxley, Atty. Gen., and Gordon Madison, E. Ray Acton and J. Victor Price, Jr., Asst. Attys. Gen., Montgomery, Ala., for defendants.

## ORDER

JOHNSON, Chief Judge.

This action was originally brought by the National Association for the Advancement of Colored People on behalf of its members and all similarly situated Negroes in the State of Alabama. The complaint alleged that defendant Allen as Director of the Alabama Department of Public Safety and defendant Frazer as Personnel Director of the Alabama Personnel Department have followed a continuous and pervasive pattern and practice of excluding Negroes from employment in the Department of Public Safety. At the commencement of the hearing in this case, a motion by Phillip

Paradise, Jr., to intervene as a party, plaintiff, individually and on behalf of the class similarly situated, was granted.

The Department of Public Safety has two major components: the state troopers and those secretaries, clerks and others who comprise the supporting personnel. There are two other groups closely associated with the department: the trooper cadets and auxiliary troopers. The cadets are men too young to qualify as regular troopers but who receive training from the department toward becoming troopers. The auxiliary force is a group of unpaid volunteers which performs trooper functions under department direction in time of emergency and which is selected on the basis of a recommendation.

Because the agency's supporting staff is essentially identical to those personnel who were the focus of this Court's order in United States v. Frazer, 317 F.Supp. 1079 (M.D.Ala.1970) and because these employees are obtained from the defendant Frazer's department, this Court has determined that the appropriate relief as to these positions will be treated as a motion for supplemental relief under the *Frazer* decision.

The state troopers, however, are a different matter. This group is a distinct, specialized force which is unlike the relatively fungible secretaries and clerks who populate every office. For example, the troopers have their own height, weight and age requirements, maintain a separate testing program and require an oral interview. The trooper force has an extensive and specialized training program. For these reasons, it is clear that the state trooper aspect of this case justifies the filing and prosecution of separate litigation and requires separate adjudication.

The defendants have raised an objection to the NAACP's right to bring this suit. It was, however, the uncontroverted testimony of the association's state president, Mr. Thomas Reed, that some of its members have sought jobs with the department and have been refused. It is well established that the NAACP has standing to assert the rights of its members. NAACP v. Button, 371 U.S. 415, 428, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Louisiana ex rel. Gremillion v. NAACP, 366 U.S. 293, 296, 81 S.Ct. 1333, 6 L.Ed.2d 301 (1961); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 458, 78 S.Ct. 1163, 2 L. Ed.2d 1488 (1958). Any standing question in this case was further obviated by the intervention of plaintiff Paradise. His testimony at the hearing for a temporary restraining order was undisputed that he was refused a trooper application. He contends that the refusal was racially motivated. Accordingly, defendants' motion to dismiss is due to be denied.

Plaintiffs have shown without contradiction that the defendants have engaged in a blatant and continuous pattern and practice of discrimination in hiring in the Alabama Department of Public Safety, both as to troopers and supporting personnel. In the thirty-seven-year history of the patrol there has never been a black trooper and the only Negroes ever employed by the department have been nonmerit system laborers. This unexplained and unexplainable discriminatory conduct by state officials is unquestionably a violation of the Fourteenth Amendment. Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); United States v. Frazer, *supra.*

Under such circumstances as exist in these cases, the courts have the authority and the duty not only to order an end to discriminatory practices, but also to correct and eliminate the present effects of past discrimination. Hutchins v. United States Industries, Inc., 428 F. 2d 303, 310 (5th Cir. 1970); Local 53, Asbestos Workers v. Vogler, 407 F.2d 1047, 1052 (5th Cir. 1969). The racial discrimination in this instance has so permeated the Department of Public Safety's employment policies that both

mandatory and prohibitory injunctive relief are necessary to end these discriminatory practices and to make some substantial progress toward eliminating their effects.

While further discrimination will be enjoined, this Court is not inclined to order new tests or testing procedures. This Court recognizes that Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) is authority for the view that if an employment practice which operates to exclude Negroes is unrelated to job performance, the practice is prohibited. Yet there are persuasive reasons for avoiding the imposition of new procedures. First, the Government's selection technique expert, John E. Furcon, testified that it would require a minimum of six months to properly analyze the job of state trooper and compile proper selection methods. The plaintiffs' expert, Dr. Richard S. Barrett, estimated that the process may take as much as four or five years, particularly in light of the fact that there are presently no black troopers. Thus, it would in all likelihood take several years to implement the selection procedures which these experts envision.

Second, Dr. Barrett described Mr. Furcon's cost estimate of $40,000 for the completion of such an analysis as perhaps too low. Imposition of such a study would be an undue burden upon the state. Moreover, in light of the affirmative relief which this Court will require, primary concern over the testing procedures is unnecessary. This is not to say that the state may not undertake some revision of its selection methods if it desires to do so. In fact, the testimony reflects that changes are appropriate and necessary. This Court will simply not order it at this time. This particular aspect of the state trooper case will be reserved pending receipt of implementation reports to be filed by the defendants.

Accordingly, it is the order, judgment and decree of this Court:

I. That defendants' motion to dismiss be and the same is hereby denied.

II. That the defendants John S. Frazer, as Director, Alabama Personnel Department and Walter L. Allen, as Director, Alabama Department of Public Safety, their agents, officers, successors in office, employees and all persons acting in concert or participation with them, be and they are hereby enjoined from engaging in any employment practices, including recruitment, examination, appointment, training, promotion, retention or any other personnel action, for the purpose or with the effect of discriminating against any employee, or actual or potential applicant for employment, on the ground of race or color.

III. It is further ordered that the defendants be and they are each hereby enjoined from failing to hire and permanently employ after the probationary period, one Negro trooper for each white trooper hired until approximately twenty-five (25) percent of the Alabama state trooper force is comprised of Negroes. This injunction applies to the cadet and auxiliary troopers as well as to the regular troopers. It shall be the responsibility of the Department of Public Safety and the Personnel Department to find and hire the necessary qualified black troopers.

IV. It is further ordered that the defendants be and they are hereby enjoined from conducting any training courses for the purpose of training new troopers until the groups to be given said training courses are comprised of approximately twenty-five (25) percent black trooper candidates.

V. It is further ordered that the defendants be and they are each hereby permanently enjoined from failing to hire supporting personnel for the Department of Public Safety in the ratio of one Negro for each white until approximately twenty-five (25) percent of the supporting personnel are black. The decree in United States v. Frazer, 317 F.Supp. 1079 (M.D.Ala.1970) is hereby amended insofar as the Department of Public Safety's employment practices are concerned.

VI. It is further ordered that eligible and promotional registers heretofore used for the purpose of hiring troopers be and they are hereby abrogated to the extent necessary to comply with this decree.

VII. It is further ordered that:

1. The defendants shall assign employees on the basis of their training and ability, without regard to race. Negro employees shall not be assigned to serve exclusively or predominantly Negro clientele.

2. The defendants shall advise the public in all advertisements and announcements that they will appoint and employ persons on an equal opportunity, merit basis, without discrimination on the ground of race or color. In such public announcements, the defendants shall advise potential and actual applicants and employees of their right to be free from discrimination. Said announcements shall be made throughout the State of Alabama within thirty days from the date of this order.

3. The defendants shall adopt and implement a program of recruitment and advertising which will fully advise the Negro citizens of the State of Alabama of the employment opportunities now available to them with the Alabama Department of Public Safety. The defendants shall institute regular recruitment visits to predominantly Negro schools (vocational, high and college) throughout the State of Alabama, such visits to be made in person by appropriate officials of the Alabama Department of Public Safety.

4. No commitments of employment given by either of the defendants or any of their agents to any applicant or potential applicant, short of actual hiring prior to January 13, 1972, the date the temporary restraining order was entered in the state trooper case, shall be given any priority over the hiring ratio set out in this decree. The present hiring lists, compiled as a result of the discriminatory practices, may be used to hire the white troopers, white trooper cadets and white supporting personnel. New lists, however, must be compiled and utilized for the black troopers, black trooper cadets and black supporting personnel.

5. The defendants shall file through their counsel with this Court within ninety days from the date of this decree a written report setting forth in detail the efforts which have been undertaken to recruit and hire black applicants. The report shall also include the number of vacancies filled among the state troopers, the auxiliary troopers, the cadets and the supporting personnel of the Department of Public Safety during this period and the number of each race hired into each of these groups.

VIII. It is further ordered that the costs of this proceeding be and they are hereby taxed to the defendants in Civil Action No. 3561–N, for which execution may issue.

The Court retains jurisdiction over these cases.

SUPPLEMENTAL OPINION

In a formal order, made and entered in this case on February 10, 1972, this Court found that defendants had practiced blatant and continuous discrimination in hiring in the Alabama Department of Public Safety both as to troopers and supporting personnel.[1] Pursuant to this finding, the Court directed, among other things, that defendants employ one Negro trooper for each white trooper

---

1. Because the supporting staff of the Alabama Department of Public Safety is essentially identical to those personnel who were the focus of this Court's order in United States v. Frazer, 317 F.Supp. 1079 (M.D.Ala.1970), and because these employees are obtained from the defendant Frazer's Department, this Court determined that the aspect of plaintiffs' complaint related to these positions would be treated as a motion for supplemental relief under the *Frazer* decision. Nevertheless, for the sake of convenience, in the text, the two cases involved in this litigation will be referred to in the singular.

hired until approximately twenty-five percent of the Alabama state trooper force was comprised of Negroes.[2] On February 24, plaintiffs filed with the Court a revised bill for the costs incurred in litigating this case,[3] and that bill, along with plaintiffs' previous request for attorneys' fees,[4] now is submitted for the Court's determination.

■ Because defendants have not contested their liability for the usual items of costs, this Court proceeds to plaintiffs' prayer for attorneys' fees. Defendants acknowledge that the Court may, in the exercise of its equity powers, grant such relief. See, e. g., Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L. Ed. 1184 (1939); Morrow v. Crisler, C. A. No. 4716 (S.D.Miss., Sept. 29, 1971). They argue, however, that an award of attorneys' fees is unwarranted in this case because they have attempted in good faith, albeit unsuccessfully, to hire black troopers. This contention is not supported by the evidence. Plaintiffs have demonstrated and this Court has noted that in the thirty-seven-year history of the Alabama Trooper organization there has never been a black trooper, and the only Negroes ever employed by the department have been nonmerit system laborers. NAACP v. Allen, 340 F.Supp. 703 (M.D.Ala.1972). Such statistics, far from being compatible with defend-

ants' claim of good faith, constitute a substantial showing by plaintiffs of bad faith on the part of defendants and their predecessors in office.[5] In addition, because the constitutional principles applicable to the case sub judice were clear long before this suit was filed, see, e. g., Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961); Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); Morrow v. Crisler, supra, and because defendants unquestionably knew and understood that their discriminatory practices violated the Fourteenth Amendment to the United States Constitution, see United States v. Frazer, 317 F.Supp. 1079 (M.D.Ala.1970), their defense of this lawsuit amounts to unreasonable and obdurate conduct which necessitated the expense of litigation. Consequently, because of defendants' bad faith, this case is an appropriate one for the awarding of a reasonable attorneys' fee.

■ This Court, however, feels that the attorneys' fee award should be premised on a broader basis than defendants' bad faith. When plaintiffs, through the prosecution of a lawsuit, benefit the class they represent and effectuate a strong congressional policy, they are entitled to attorneys' fees regardless of defendants'

2. The Court also ordered the defendants to hire supporting personnel for the Department of Public Safety in the ratio of one Negro for each white until approximately twenty-five percent of the supporting personnel were black.

3. Plaintiffs filed their original bill of costs on February 16, 1972, and defendants filed objections thereto on February 23. Subsequently, plaintiffs revised their bill of costs, satisfying most of the defendants' objections. Except with regard to attorneys' fees, defendants now interpose no objections to the items of cost on plaintiffs' revised bill. The United States, plaintiff and amicus curiae in this case, also has filed a bill of costs to which defendants make no objection.

4. Plaintiffs requested attorneys' fees in their complaint filed January 3, 1972.

Defendants do not dispute that if plaintiffs are entitled to an award of attorneys' fees, the amount they seek, $3,500, is reasonable. They do contest, however, that plaintiffs are entitled to any award whatsoever.

5. Moreover, in United States v. Frazer, 317 F.Supp. at 1093, this Court ordered the Department of Personnel to "adopt and implement a program of recruitment and advertising which will fully advise Negro citizens of the State of Alabama of the employment opportunities available to them with the State of Alabama agencies." At least with regard to positions in the Department of Public Safety, this obligation has not been fulfilled. Regardless of whether this omission is the product of intentional discrimination or merely of neglect, it clearly amounts to bad faith on the part of defendants.

good or bad faith. Mills v. Electro Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) ; see Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970). Indeed, under such circumstances, the award loses much of its discretionary character and becomes a part of the effective remedy a court should fashion to encourage public-minded suits and to carry out congressional policy. See Lee v. Southern Home Sites, 444 F.2d 143 (5th Cir. 1971) ; Sims v. Amos, 340 F. Supp. 691 (M.D.Ala., 1972) (three-judge court).

■ In the present case, the benefit accruing to plaintiffs' class is substantial and important. Employment discrimina-tion based upon race is reprehensible on any level, and especially so when practiced by state government.[6] Those plaintiffs acting in the capacity of private attorneys general, who establish the existence of such discrimination by a state agency and who, through litigation, procure relief from its onerous effects, not only provide the members of their class with added employment opportunities, but also relieve them of the badge of opprobrium which necessarily attaches to a group discriminatorily excluded, solely by reason of their race, from particular fields of endeavor.

■■ In addition, congressional policy strongly favors the vindication of federal rights violated under color of state law, 42 U.S.C. § 1983,[7] and, more specifically, the enforcement and protection

---

6. Employment discrimination based upon race is equally if not more reprehensible when practiced by the Federal Government. As the defendants point out in a memorandum filed in this case, there was admitted in evidence in United States v. Frazer, supra, unexplained and undisputed facts reflecting, absent some explanation, flagrant racially discriminatory hiring practices by several federal agencies operating in the State of Alabama; for example, in its Maxwell and Gunter Air Force Base operations, the United States employed at that time a total of 2,183 civilian employees. Only 387 were black, and of these 387 black employees 353 were employed on an hourly wage basis, indicating that they were employed as laborers, with only 15 blacks being employed under the General Employment Schedule.

The United States Department of Agriculture employed in the State of Alabama 1,144 civilian employees. Only 37—3.2 percent—of these were black.

The United States Civil Service, operating in Alabama, had a total of 51 employees, only 3 of whom were black. The United States Department of Defense had 477 civilian employees in Alabama, only 9—1.9 percent—of whom were black. The United States Department of Justice had a total of 265 employees in Alabama; only 5 of these—1.9 percent—were black. Of these 5, all except one were in grade 7 or below.

The United States Department of Health, Education and Welfare had a total of 2,128 employees in Alabama. Only 203 of these were black, and of this number of black employees, 158 were in grade 4 or below.

The United States Department of Housing and Urban Development had a total of 121 civilian employees in Alabama, only 3 of whom—2.5 percent—were black. Two of these three were in grade 3. The United States Department of the Interior employs in the State of Alabama 173 persons. Of this total only 1—0.6 percent—was black. The National Aeronautics and Space Agency had 6,641 employees in Alabama, only 81 of whom—1.2 percent—were black. Among Selective Service employees in the State of Alabama there was not a single black.

The United States Department of Transportation had 386 employees in the State of Alabama; only 6 of them—1.6 percent—were black. The United States Treasury Department employed 696 persons in Alabama, 13 of whom—1.9 percent—were black.

However gross such practices are on the part of the Federal Government, this will not justify this Court's failure to grant the plaintiffs in this case the full relief, including attorneys' fees, to which they are clearly entitled. Such practices on the part of federal agencies do not constitute any type of a defense in this case. Relief as to the federal agencies must await a justiciable presentation to a forum with competent jurisdiction between parties entitled to litigate the matter.

7. With regard to an award of attorneys' fees, it is of no consequence that 42 U.S. C. § 1983, the statute under which plain-

of the right to equal job opportunities, 42 U.S.C. §§ 2000e, 2000e–1 to 2000e–15.[8] Surely, this congressional policy is as compelling as that embodied in 42 U.S.C. § 1982 [9] and given effect by an award of attorneys' fees in Lee v. Southern Home Sites, supra. Consequently, because the benefit to plaintiffs' class is significant, and because, in bringing this suit, plaintiffs have promoted the purposes of congressional legislation, the case *sub judice* clearly falls among those meant to be encouraged under the principles articulated in *Piggie Park Enterprises, Inc.* and *Mills* and expanded upon in *Southern Home Sites* and Bradley v. School Bd. of Richmond, 53 F.R.D. 28 (E.D.Va.1971). See Sims v. Amos, supra.

Other circumstances also render an allowance of attorneys' fees appropriate. The prosecution of the kind of case involved here, like that of the desegregation suits described in *Bradley*, "is an enterprise on which any private individual should shudder to embark." 53 F.R.D. at 40. Because the probability of a large damage recovery is remote, absent court-awarded attorneys' fees, plaintiffs or their lawyers who bring class actions seeking to preserve civil liberties usually must make substantial financial sacrifices. In addition, a lawyer representing black plaintiffs in an employment discrimination case, or in any civil rights litigation, is likely to suffer social, political and community ostracism.

This likelihood is multiplied, of course, in a case such as the present one in which plaintiffs have sued high-ranking state officials and have alleged and proved racial discrimination. Even more damaging to an attorney involved in such litigation is the probability that he will be estranged from other members of his profession who are unwilling to participate in, or even lend moral support to, suits seeking to vindicate the public good. Because of these factors and the paucity of damage awards in civil rights suits, private plaintiffs and lawyers generally spurn involvement with them. Consequently, as pointed out in Sims v. Amos, in order to encourage *pro bono publico* litigation and to carry out congressional policy, an award of attorneys' fees is essential.

Accordingly, it is the order, judgment and decree of this Court:

1. That plaintiffs' costs in the amount of $889.67 be and the same are hereby taxed against defendants;[10]

2. That the United States' costs in the amount of $941.01 be and the same are hereby taxed against defendants; and

3. That attorneys' fees in the amount of $3,500 be and the same are hereby taxed against defendants.

It is further ORDERED that said costs and attorneys' fees be paid within thirty days from this date.

---

tiffs filed this suit, is silent on the availability of such an award. See Long v. Georgia Kraft Co., 455 F.2d 331 (5th Cir., 1972), and the many cases cited therein; Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972).

8. Title VII of the Civil Rights Act of 1964 provides for the allowance of a reasonable attorneys' fee. 42 U.S.C. § 2000e–5.(k). Consequently, had the state officials involved in this case been subject to suit under Title VII, they also would have been exposed to liability for attorneys' fees. This Court sees no justification for holding state governments to lower standards than are required of private employers, nor for subjecting them to any less liability than that to which private em-

ployers are exposed. The same policies supporting a grant of attorneys' fees in Title VII cases apply to employment discrimination cases brought under 42 U.S.C. §§ 1981, 1983. See generally, Lee v. Southern Home Sites, 444 F.2d at 147.

9. Title 42, Section 1982 provides:
"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

10. No official immunity inures to the benefit of the state officers named as defendants in this case. See Sims v. Amos, supra at n. 8.