Margo SEAMAN, on behalf of herself and all others similarly situated,
Plaintiff,

v.

SPRING LAKE PARK INDEPENDENT SCHOOL DISTRICT NO. 16 et al.,
Defendants.

No. 4–73–Civ. 23.

United States District Court,
D. Minnesota,
Fourth Division.

July 29, 1974.

Ellen Dresselhuis and Richard De-Long, Minneapolis, Minn., for plaintiff.

Joseph E. Flynn and Peter S. Popovich, Peterson, Popovich, Knutson & Flynn, St. Paul, Minn., for defendants.

## MEMORANDUM

LARSON, District Judge.

This is an action for an award of attorneys' fees and for declaratory relief establishing the plaintiff's entitlement to sick leave pay for the period of time she was absent from work due to maternity-related disability.

The plaintiff Margo Seaman is a married, public elementary school teacher at Park Terrace School in the Spring Lake Park Independent School District No. 16. In January 1973 when she was approximately seven months pregnant, she brought an action in this Court to enjoin the School District, its Superintendent and chief administrative officer, and members of the Board of Education from placing her on a semester-long maternity leave of absence. The plaintiff contended that being compelled to leave her job at that time violated her rights under the due process and equal protection clauses of the Fourteenth Amendment and her right to marital and familial privacy.

On January 22, 1973, a preliminary injunction was granted. Seaman v. Spring Lake Park Independent School District No. 16, 363 F.Supp. 944 (D. Minn.1973). The plaintiff continued in her teaching position until March 5, 1973. The following day she gave birth. She resumed work on March 27, 1973, after missing 15 working days, and continued working during the past school year.

She now brings motions for attorneys' fees incurred by her in this litigation and for a declaratory judgment that would in effect make her eligible to recover sick leave pay for the period of her absence during which she was physically disabled.

## I. *Jurisdiction*

■ The plaintiff initially brought this action for claimed violations of her constitutional rights under 42 U.S.C. § 1983. Although the jurisdictional issue was not raised at the time of the granting of the preliminary injunction, the defendant School District is not subject to liability under § 1983. Morey v. Independent School District No. 492 of Minnesota, 312 F.Supp. 1257, 1261–1262 (D.Minn.1969), aff'd 429 F.2d 428 (8th Cir. 1970). *See also* City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The District must therefore be dismissed for lack of jurisdiction.

■■ The other defendants, the Superintendent and individual members of the Board of Education, are subject to § 1983 and may be held liable for the relief being sought here. Lessard v. Van Dale, 318 F.Supp. 74 (E.D.Wis.1970). *Compare* Abel v. Gousha, 313 F.Supp. 1030 (E.D.Wis.1970).[1]

---

1. It has also been held that a school board is not a "person" within the meaning of § 1983. Guelich v. Mounds View Independent School District No. 621, 334 F.Supp. 1276 (D.Minn.1972). *But see* Harkless v. Sweeny Independent School District, 427 F.2d

## II. *Attorneys' Fees*

The plaintiff seeks an award of $2,536.64 for the two attorneys who have represented her in this case. The rule governing the award of attorneys' fees in litigation in Federal Court is that such fees "are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor." F. D. Rich, Inc. v. United States For Use of Industrial Lumber Co., 417 U.S. 116, 126, 94 S.Ct. 2157, 2163, 40 L.Ed.2d 703 (1974) (action for attorneys' fees under the Miller Act, 40 U.S.C. § 270a et seq.), quoting from Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U. S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). *See also* Fowler v. Schwarzwalder, 498 F.2d 143 (8th Cir. 1974); Lykken v. Vavreck, 366 F.Supp. 585, 597–598 (D.Minn.1973). Although subject to much criticism over the years, F. D. Rich, Inc. v. United States For Use of Industrial Lumber Co., *supra*, 417 U. S. at 127, 94 S.Ct. 2157, n. 14, "there are countervailing considerations as well." *Id.*, 129, 94 S.Ct. 2165. One of the supporting rationales is that "one should not be penalized for merely defending or prosecuting a lawsuit." *Id.*, quoting from Fleischmann Distilling Corp. v. Maier Brewing Co., *supra*, 386 U.S. 718, 87 S.Ct. 1404.

There is no express provision for awarding attorneys' fees under § 1983, and there was no contractual undertaking to pay these fees here.

Absent such authorization, three exceptions have developed for the discretionary exercise of awarding attorneys' fees in 1983 cases. First, an award may be granted based upon bad faith or obdurate or obstinate behavior by the defendants. Second, an award may be permissible under the so-called "common fund" theory. Finally, an award may be granted on public policy grounds when the plaintiff has acted as a "private attorney general." Fowler v. Schwarzwalder, *supra*, 498 F.2d 145; Lykken v. Vavreck, *supra*, 366 F.Supp. 598; *see also* F. D. Rich, Inc. v. United States For Use of Industrial Lumber Co., *supra*, 417 U.S. at 126.

None of these grounds justifies an award here.

█ The bad faith exception is primarily a punitive measure where the unsuccessful party's conduct, either in the action that generates the litigation, or in the course of the litigation itself, makes it equitable to award attorneys' fees to the prevailing party. Lykken v. Vavreck, *supra*, 366 F.Supp. 598; La Raza Unida v. Volpe, n. 1, *supra*, 57 F. R.D. 96.

There was no improper motivation in defendants' attempt to compel plaintiff's maternity leave in January 1973. During the 1971–1972 school year the Board had a policy providing for permanent "termination" of a teacher after five months of pregnancy, with no guarantee of reinstatement. This was contained in the Salary Schedule negotiated by the School Board and collective bargaining representatives of the teachers in the District.

The Salary Schedule for the prior school year remained in effect during the fall of 1972, while negotiations were being conducted on a new schedule for the 1972–1973 school year. In September 1972 the plaintiff notified the School Board of her pregnancy and estimated childbirth in mid-March of 1973 and requested a leave of absence for

319 (5th Cir. 1970), cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971). Since the Board is not being sued as a corporate body in the instant case, this issue is not before the Court.

Awarding attorneys' fees against State officials has been allowed, despite the doctrine of sovereign immunity of the Eleventh Amendment and even though such fees ultimately would be paid for by the State.

Sims v. Amos, 340 F.Supp. 691, 694–695 (M.D.Ala.1972) (three-judge court), aff'd 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215. *See also* La Raza Unida v. Volpe, 57 F.R.D. 94, 101–102, n. 11 (N.D.Cal.1972). But the Eleventh Amendment does not apply to bodies of local government. Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890).

that time and also that she be allowed to resume her job three weeks after delivery. On January 16, 1973, the Board granted her a semester-long leave of absence, effective January 22, 1973, and also guaranteed her reinstatement for the 1973–1974 school year.

The basis of the Board's determination is unclear. Although the collective bargaining agreement for the 1971–1972 school year still was in effect, the Board was no longer following the policy of mandatory termination at the end of the fifth month of pregnancy. It appears that the Board imposed involuntary leaves of absence on an ad hoc basis during this period while negotiations were pending on a new maternity leave policy.[2]

At that time, mandatory maternity leave regulations or practices were commonplace in public education and other portions of the public (and private) sector as well. It was not until January 21, 1974, a year after the granting of the preliminary injunction in the instant case, that the Supreme Court dealt with the constitutionality of mandatory maternity leave policies.

In Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), the Court held that these regulations create a conclusive presumption of incapacity that is arbitrary and hence violative of the due process clause. It ruled that the time during pregnancy at which a public school teacher may be compelled to take a leave of absence must be based upon an "individualized determination . . . as to any particular teacher's ability to continue at her job" in order to satisfy due process. 414 U.S. at 644, 94 S.Ct. at 798.

Prior to *LaFleur*, the state of the law was uncertain concerning the permissibility of these regulations under the Fourteenth Amendment. This uncertainty was mentioned in the Memorandum Order accompanying the granting of the preliminary injunction in the instant case. 363 F.Supp. at 945. A year later, *LaFleur* similarly noted the conflicting decisions of the lower Federal courts. 414 U.S. at 638–639, n. 8, 94 S. Ct. 791.[3]

Notwithstanding the unclarity of the constitutionality of defendants' conduct, the plaintiff contends that had defendants complied with various Federal and State regulations in force at the time of the controversy, the litigation would have been unnecessary. Plaintiff points to the Equal Employment Opportunity Act of 1972, Pub.L. 92–261, 86 Stat. 103, effective March 24, 1972, and guidelines promulgated thereafter by the Equal Employment Opportunity Commission (29 C.F.R. § 1604.10, 37 Fed. Reg. 6837) under which mandatory maternity leave provisions were declared to be presumptively violative of Title VII of the Civil Rights Act of 1964, 78 Stat. 253, 42 U.S.C. § 2000e et seq.[4] Reference also is made to the Minnesota statutory prohibition of sex discrimination in employment, M.S.A. § 363.03 subd. 1(2)(c) and the guideline of the Minnesota Human Rights Commission, § 5(c), proscribing mandatory maternity leave

---

2. The collective bargaining negotiations ultimately resulted in adoption of a new, more flexible maternity leave policy in the master agreement for the 1972–1973 and 1973–1974 school years. Although some of the criteria spelled out in the new policy may have been taken into consideration in the Board's decision regarding the plaintiff, this policy was not formally in effect at the time of that determination.

3. In granting preliminary injunctive relief, this Court's analysis was based upon the equal protection clause. The majority decision in *LaFleur* turned on the due process

clause being violated by the irrebuttable presumption created by such regulations. The concurring opinion was predicated on equal protection. 414 U.S. at 651, 94 S.Ct. 791 (Powell, J., concurring).

4. Allowance for reasonable attorneys' fees is provided for in employment discrimination litigation under Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e–5(k). *See* NAACP v. Allen, 340 F.Supp. 703, 710, n. 8 (M.D.Ala.1972). Plaintiff did not base her action here on Title VII or any other statute or regulation.

policies based solely on pregnancy or on a specific number of months of pregnancy and instead requiring that any involuntary maternity leave be based on "individual capacities or characteristics."

But the validity of the Federal regulations had not been adjudicated at the time of the instant controversy. *See* Cleveland Board of Education v. LaFleur, *supra,* 414 U.S. 638–640, n. 8, 94 S.Ct. 791. The State regulation lacked the force of law and also had not been subject to judicial interpretation at that time. Defendants' failure to conform to them did not constitute obdurate or obstinate behavior.

Defendants were motivated by good faith, albeit constitutionally invalid, objectives. The reasons advanced by them in support of the maternity leave policy included the maintenance of continuity of classroom instruction, protection of the health of the pregnant teacher and unborn child, assurance that students have physically capable instructors, and certain administrative conveniences. In *LaFleur* the Supreme Court recognized the legitimacy of all of these aims. 414 U.S. at 641, 643, 646, 648, 94 S.Ct. 791. The mandatory termination policy was found to be constitutionally infirm because it did not further these laudable objectives in a manner consistent with due process.

■ In sum, the permissibility of the mandatory leave policy at issue in the instant case was uncertain before and during the underlying litigation. The defendants were not chargeable with awareness that their practices violated plaintiff's rights. *Compare* NAACP v. Allen, n. 4, supra, 340 F.Supp. 708. Given the unclarity of the law during the pertinent time period, defendants had a legitimate right to attempt to implement the policy and to contest the matter earnestly when challenged. Furthermore, they conducted themselves diligently and with utmost good faith during the course of the litigation and have abided faithfully by the rulings of the Court. Accordingly, the bad faith exception is inapplicable here.

■ The "common fund" doctrine pertains to situations where the plaintiff's litigation has resulted in benefit to a large class of persons. Fowler v. Schwarzwalder, *supra,* 498 F.2d 144. Although usually associated with recovery of a monetary award, Lykken v. Vavreck, *supra,* 366 F.Supp. 598, the flexibility with which the doctrine has been applied illustrates that *"pecuniary benefit need [not] be demonstrated"* to justify an award on these grounds. La Raza Unida v. Volpe, n. 1, *supra,* 57 F.R.D. 97 (emphasis in original), citing Mills v. Electric Auto-Lite, 396 U.S. 375, 90 S. Ct. 616, 24 L.Ed.2d 593 (1970). *See also* Brewer v. School Board of City of Norfolk, Virginia, 456 F.2d 943 (4th Cir. 1972) (en banc), cert. denied sub nom. Allgood v. Brewer, 409 U.S. 892, 93 S.Ct. 109, 34 L.Ed.2d 149.

The purpose of the theory is to apportion the fees among the ultimate beneficiaries of the litigation and thereby assure that "free riders" who have gained from the action compensate the plaintiff for the benefits. La Raza Unida v. Volpe, n. 1, *supra,* 57 F.R.D. 97.

■■ In the instant case no monetary fund has been created. *See* Lykken v. Vavreck, *supra,* 366 F.Supp. 598. Although the action was commenced as a class action, determination of class maintainability was never made.[5] The

---

5. This is not to say that class action status is a prerequisite for the awarding of attorneys' fees under any of the three theories under consideration. *See* Stanford Daily v. Zurcher, 366 F.Supp. 18, 24–25, n. 17 (N.D. Cal.1973). But many of the cases in which fees have been granted, absent statutory authorization, under § 1983 have been maintained as class actions resulting in benefits to more than just the individual prosecuting the lawsuit. This is particularly so with regard to injunctive actions challeging pre-*LaFleur* maternity leave policies. *E. g.,* Jinks v. Mays, 332 F.Supp. 254, 256 (N.D. Ga.1971), remanded 464 F.2d 1223 (5th Cir. 1972), 350 F.Supp. 1037, 1038 (N.D.Ga. 1972) (awarding attorneys' fees on remand).

legal effect of the Court's preliminary injunction only applied to the plaintiff herself. The practical effect, however, inured to the benefit of other teachers of childbearing capacity in the School District insofar as no other actions were thereafter brought contesting compulsory maternity leave. Moreover, as noted in the Court's Memorandum Order, plaintiff's pupils and fellow teachers were viewed as beneficiaries of her continuance in her position while she was physically capable of performing her work. 363 F.Supp. at 946. Consequently, intangible benefits were received by others as a result of plaintiff's successful litigation.[6]

But this is an inadequate basis for awarding fees in the instant case. The primary beneficiary of the litigation was the plaintiff herself. As a result of the injunctive relief, she was allowed to remain on her job and draw her salary for a period of six weeks before childbirth and then about two months after her return, whereas she would otherwise have been forced off the job and been uncompensated for these periods. Additionally, the injunction prevented her from losing eligibility for an incremental pay raise, valued at about $400, for the 1973–1974 school year and also preserved for her other benefits that she would have lost absent her success in this litigation. She alone has received real economic benefit that may be drawn upon to compensate her counsel.

The incidental and collateral benefits received by the other teachers and pupils cannot be identified or quantified. It, therefore, becomes extremely difficult and impracticable to apportion the expenses of the litigation to them. *See* La Raza Unida v. Volpe, n. 1, *supra*, 57 F. R.D. 97. The intangible benefits they received were of a totally different quantity and quality than the direct economic benefits received by the plaintiff. They have not been unjustly enriched in the sense of sharing equally in a common recovery obtained by the plaintiff.

█ In the final analysis, the "common fund" theory is attuned to business or commercial litigation. *See, e. g.,* Mills v. Electric Auto-Lite, *supra*, 396 U.S. 392, 90 S.Ct. 616; Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Bright v. Philadelphia-Baltimore-Washington Stock Exchange, 327 F.Supp. 495, 506 (E.D.Pa.1971). It is ill suited to equitable actions against governmental bodies or officials. La Raza Unida v. Volpe, n. 1, *supra*, 57 F.R.D. 97; Bradley v. School Board of City of Richmond, Virginia, 53 F.R.D. 28, 35 (E.D.Va. 1971), rev'd 472 F.2d 318 (4th Cir. 1972), vacated and remanded, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). Consequently, it cannot be relied on here to justify an award of fees.

█ This leaves the "private attorney general" exception under which fees may be awarded as an incentive to bringing litigation that effectuates strong Congressional policy. Although never squarely passed upon by the Supreme Court, F. D. Rich, Inc. v. United States For Use of Industrial Lumber Co., *supra*, 417 U.S. at 126, 94 S.Ct. 2157, this theory has gained acceptance in the Eighth Circuit and elsewhere. Fowler v. Schwarzwalder, *supra*, 498 F. 2d 145; Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972); Lykken v. Vavreck, *supra*, 366 F.Supp. 597; La Raza Unida v. Volpe, n. 1, *supra*, 57 F.R.D. 98–102; Jinks v. Mays, n. 5, *supra*, 350 F.Supp. at 1038 (on remand). The doctrine is based upon the premise that in acting as a "private attorney general" seeking to vindicate significant Congressional policies in furtherance of the public interest, a plaintiff should not have to bear

---

**6.** The plaintiff was a member of an experimental team-teaching unit in which a group of five teachers and four aides had joint responsibility for instruction of 131 nine, ten, and eleven year old pupils. Some of these pupils had been under the plaintiff's guidance for more than a year. An affidavit by the school's principal indicated that the pupils and fellow teachers in the unit would be detrimentally affected by the plaintiff's long absence from work if a semester-long leave were to be imposed.

the costs of litigation. Fowler v. Schwarzwalder, *supra*, 498 F.2d 145; *see also* Newman v. Piggie Park Enterprises, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968).

Among the factors to be considered in determining the propriety of an award under this theory are the strength of the Congressional policy, the number of persons benefited by the results of the litigation, and the necessity and financial burden of private litigation to effectuate the interest. La Raza Unida v. Volpe, n. 1, *supra*, 57 F.R.D. 99.

Many of the cases that have applied this doctrine have involved racial discrimination. *E. g.*, Cooper v. Allen, *supra*; NAACP v. Allen, n. 4, *supra*. The historic and pervasive national interest in eliminating racial discrimination underlies these cases.

Another fertile field for the application of the doctrine is in the area of First Amendment rights. Stolberg v. Members of Board of Trustees for State Colleges of State of Connecticut, 474 F.2d 285 (2d Cir. 1973); Donahue v. Staunton, 471 F.2d 475 (7th Cir. 1972), cert. denied, 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973). Here, it is the deeply engrained national commitment to "robust public discussion," Donahue v. Staunton, *supra*, 471 F.2d 483, and the concomitant aversion to imposing a "chilling effect" on the exercise of these rights that prompts awarding fees. *Id.*, Stolberg v. Members of Board of Trustees for State Colleges of State of Connecticut, *supra*, 474 F.2d 490–491.

Other areas where the applicability of the doctrine has been recognized include unlawful police conduct, Stanford Daily v. Zurcher, n. 5, *supra*; *see also*, Lykken v. Vavreck, *supra*, 366 F.Supp. 597; equality of voting rights, Sims v. Amos, n. 1, *supra*; and environmental litigation, *e. g.*, La Raza Unida v. Volpe, n. 1, *supra*.

The subject of sex discrimination in employment in the instant case also may be viewed as a matter of significant Congressional concern.[7] In this litigation, plaintiff has vindicated important federally-protected civil rights. *See* Jinks v. Mays, n. 5, *supra*, 350 F.Supp. at 1038 (on remand).

The number of persons who benefited from the litigation was relatively small. Those who collaterally gained from the outcome are the fellow instructors and pupils in the plaintiff's teaching unit as well as other teachers of childbearing capacity in the School District. *See* n. 6, *supra*. Unlike cases establishing rules or principles applicable to a broad swath of society, this litigation did not have sweeping impact on non-parties. "Nor is this a typical pro bono publico case where a particular plaintiff . . . has little to gain personally but establishes a principle." Lykken v. Vavreck, *supra*, 366 F.Supp. 598. Here as in *Lykken*, the plaintiff principally was acting in her own interest and gained personally by the result of the litigation.

Because of this motivation, an award of attorneys' fees does not appear to be necessary here to encourage the bringing

---

7. There is no merit to defendants' suggestion that the subject of this litigation is not a matter of significant Congressional concern. Defendants' Supplemental Brief in Opposition to Plaintiff's Motion for Maternity Leave Pay and Attorneys' Fees, p. 38. By a variety of legislation, including passage and submission of the Equal Rights Amendment for ratification by the State legislatures, Congress has "manifested an increasing sensitivity" to deprivation of equal employment rights on the basis of sex. Frontiero v. Richardson, 411 U.S. 677, 687, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). While *La-*

*Fleur* turned on due process, rather than equal protection, grounds, *see* n. 3, *supra*, prior cases (including the injunctive relief granted by this Court) employed equal protection analysis. *E. g.*, LaFleur v. Cleveland Board of Education, 465 F.2d 1184 (6th Cir. 1972), aff'd on different grounds, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1973); Williams v. San Francisco Unified School District, 340 F.Supp. 438 (N.D.Cal.1972). Regardless of the legal theory, the operative effect of these mandatory maternity leave regulations is that they unfairly infringe upon the employment rights of women.

of such suits. By preserving her right to remain on the job during the latter stages of her pregnancy and following her delivery, the plaintiff secured significant economic benefits. If she is forced to absorb her own attorneys' fees, she will not be made whole. But the pertinent point is that she and others faced with prospective loss of employment have a strong economic self-interest to bring their actions in a judicial forum. Vindication of their rights will not necessarily be inhibited in the absence here of an award of attorneys' fees.

Other considerations also counsel against an award of fees. The relative financial postures of the parties at the time of the alleged deprivation is a relevant factor. Donahue v. Staunton, *supra,* 471 F.2d 483; La Raza Unida v. Volpe, n. 1, *supra,* 57 F.R.D. 100–101. The plaintiff had the financial capacity and sufficient personal pecuniary stake in the outcome to proceed with this action on her own.

In undertaking this litigation, plaintiff and her counsel were not championing "unpopular" causes likely to arouse deep-seated community antagonism. *Compare* NAACP v. Allen, n. 4, supra, 340 F.Supp. 710; *see also* Stolberg v. Members of Board of Trustees for State Colleges of State of Connecticut, *supra;* Donahue v. Staunton, *supra;* Lykken v. Vavreck, *supra;* Stanford Daily v. Zurcher, n. 5, *supra.* An award would not seem to be a significant factor in motivating others aggrieved by employment discrimination on grounds of sex to pursue their claims.

This case, thus, was essentially a private dispute lacking in the broad societal repercussions that often characterize actions in which attorneys' fees have been awarded under § 1983. Based upon all of these considerations, this is not an appropriate case for the award of attorneys' fees. While the Court recognizes and commends the competency and effort with which counsel have litigated this matter, it concludes that an award here must be denied.

## III. *Sick Leave*

In the master bargaining agreement in effect for the 1972–1973 and 1973–1974 school years, it is provided that maternity leave "shall be leave without pay." Based upon this provision, the School Board has refused plaintiff's request for sick leave pay for the period she was on maternity leave.

Plaintiff contends that treating maternity-related disability different from other kinds of disabilities for which sick leave pay is granted constitutes discrimination based on sex in violation of the equal protection clause. She seeks a declaratory judgment that defendants treat her condition identically with other disabilities and therefore pay her benefits for such period of time as she can establish actual disability due to pregnancy, delivery, and confinement.

█ Although the instant case was dormant for more than a year following the granting of the preliminary injunction, the assertion of laches does not bar this relief. Defendants' counsel was informed last September that the plaintiff intended to press her demand for sick pay. By letter of September 19, 1973, plaintiff's counsel notified the Court and opposing counsel that the case should "remain open" until resolution by the Supreme Court of the then pending *LaFleur* case and that the sick pay issue would thereafter be raised.

█ But plaintiff is not entitled to declaratory relief here. Although only women can become pregnant, "it does not follow that every legislative classification concerning pregnancy is a sex-based classification" violative of the equal protection clause. Geduldig v. Aiello, 417 U.S. 484, 496, 94 S.Ct. 2485, 2492, 41 L.Ed.2d 256, 42 L.W. 4905, 4908, n. 20 (1974).

█ In *Geduldig,* the Supreme Court upheld the exclusion of disabilities attributable to normal pregnancy and childbirth from the Californa disability insurance system providing compensation for temporarily disabled employees who are not covered by workmen's com-

pensation. Treating pregnancy-related reasons different from other kinds of disability for purposes of sick pay is not "discrimination based upon gender as such." *Id. Compare* Frontiero v. Richardson, n. 7, *supra*, and Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Absent a showing that such a distinction is a mere pretext aimed at invidiously discriminating against women, the exclusion of pregnancy-related reasons from the list of compensable disabilities is permissible if predicated "on any reasonable basis." Geduldig v. Aiello, *supra*, 417 U.S. at 496, 94 S.Ct. at 2492, n. 20.

There is no evidence of illicit motivation by defendants in the instant case. The exclusion of sick pay for maternity leave arises out of collective bargaining negotiations between representatives of teachers and the School Board. No contention is made that women teachers did not have a fair opportunity to have their interests represented in these negotiations.

A principal justification for the exclusion in *Geduldig* was the State's interest in maintaining financial resources "at an adequate level for disabilities that are covered, rather than to cover all disabilities inadequately." *Id.*, 417 U.S. 496, 94 S.Ct. 2492. There is a similarly rational and legitimate basis for the differential treatment accorded pregnancy-related disability in the instant case.

Allocating sick pay for disabilities related to pregnancy would drain money that the School Board and apparently the teachers themselves, would rather have available for salaries or other purposes. Here, as in *Geduldig*, a decision has been made as to what disabilities will be compensable and at what levels. The decision not to provide for pregnancy-related disabilities is a rational choice untainted by illicit motivation. *Compare* Bravo v. Board of Education of City of Chicago, 345 F.Supp. 155, 159 (N.D.Ill. 1972) ("no reason" offered to support pre-*LaFleur* policy precluding sick pay for maternity leave).

This is not to say that maternity-related disability may be treated differently than other disabilities for all purposes. *LaFleur* settled the matter concerning leave of absence during pregnancy. Additionally, there may be certain post-pregnancy benefits for which no permissible distinction may be made between maternity-related and other disabilities. For instance, entitlement to regain one's job and other elements of seniority may fall within this category.

But as far as compensation for maternity leave disability, the rational and legitimate interest in balancing and preserving financial resources suffices here to justify the policy. Accordingly, the motion for declaratory relief must be denied.