**Mr. and Mrs. Robert F. GUESNON**

v.

**BOARD OF LIQUIDATION, CITY DEBT OF the CITY OF NEW ORLEANS, and the Individual members thereof.**

**Civ. A. No. 75-109.**

United States District Court,
E. D. Louisiana.

June 10, 1975.

Sidney M. Bach, New Orleans, La., for plaintiffs.

Harry B. Kelleher, James A. Churchill, George Frazier, IV, Trevor G. Bryan, Lemle, Kelleher, Kohlmeyer & Matthews, New Orleans, La., for the Bd. of Liquidation City Debt, and the individual members of said Bd., defendants.

COMISKEY, District Judge.

This class action, on behalf of all non-caucasian citizens of New Orleans, seeks declaratory and/or injunctive relief pursuant to sections 1981 and 1983 of the United States Code, Title 42. The plaintiffs allege that the defendants Board of Liquidation, City Debt, and its individual members have violated the Fourteenth Amendment guarantees of equal protection and due process in restricting Board membership to caucasians.

The relevant facts may be summarized briefly. The Board sits as a public agency authorized under state law to administer New Orleans' indebtedness, as well as supervise the bond issues of both the city and the Sewerage & Water Board. The body consists of six syndicate members, who serve without pay, and three non-syndicate, *ex officio* members, who are the Mayor and two City Councilmen. The testimony at trial established that syndicate members fill vacancies according to an essentially discretionary appraisal of candidates' integrity, financial expertise and experience; that the consideration and actual selection takes place at private, informal gatherings of the syndicate membership, with merely *pro forma* nomination and appointment of the new member occurring at a subsequent, regular meeting; and that a non-caucasian has not served as a member of the Board since its inception in 1880. Also in evidence is a stipulation by all defendants that

> at the time or times one or more of the six incumbent syndicate members of the Board . . . were appointed, there were an indeterminant number of persons who were qualified in terms of integrity, financial ability, and financial expertise to become members . . ., some of whom were not members of the Caucasian race.

Some of the Board members testified at trial that, to their personal knowledge, the Board never has even considered any non-caucasians to fill a vacancy.

The Equal Protection Clause requires the equal treatment under law of similarly situated individuals, and it now is axiomatic that a particularly invidious form of disparity is that which burdens a racially-defined group of persons. In such cases, courts will subject the challenged action to the "most rigid scrutiny." *See Loving v. Commonwealth of Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1964). That this case presents no overt classification of persons by race, of course, does not free it from the Fourteenth Amendment mandate of equal protection. Nor, in the court's judgment, is the absence of evidence that Board members purposefully excluded non-caucasians from their number fatal to the plaintiff's claim. Several years ago, in a now-famous decision, the Fifth Circuit endorsed an approach

which dispenses with the need for such proof in these proceedings:

> [E]qual protection of the laws means more than merely the absence of governmental action designed to discriminate; . . . 'we now firmly recognize that the *arbitrary quality of thoughtlessness* can be as disastrous and unfair to private rights and to the public interest as the perversity of a willful scheme.' [citing *Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920, 931 (2d Cir. 1968)].

*Hawkins v. Town of Shaw, Mississippi,* 461 F.2d 1171, 1172–3 (5th Cir. 1972).

It is true, as defendants note, that the court announced this principle in a case involving the denial of municipal services to black citizens. *See also United Farm of Fla. H. Proj., Inc. v. City of Delray Beach,* 493 F.2d 799 (5th Cir. 1974). But, perhaps foreseeing attempts to narrow its applicability, Judge Wisdom emphasized the general importance of the decision's holding in his specially concurring opinion. *See* 461 F.2d at 1175. Moreover, even prior to *Hawkins,* the Fifth Circuit had laid at least a partial basis for the decision in a case where blacks were excluded from grand and petit juries. In that context, the court found the "objective results" of discrimination sufficient without proof of "ill will, evil motive, or absence of good faith . . ." *United States v. Wiman,* 304 F.2d 53, 65 (5th Cir. 1962). Nor has the circuit limited *Hawkins* to its facts since the decision was announced. *See Toney v. White,* 476 F.2d 203 (5th Cir. 1973) (voter registration). *See also Allen v. City of Mobile,* 466 F.2d 122, 124 (5th Cir. 1972) (Goldberg, J. diss.).

■ Defendants argue that this case is distinguishable from the *Hawkins*

progeny since these discretionary appointments to the Board—as among citizens who are not equally entitled to appointment—necessitate discrimination "in its best sense." The Board, however, must be viewed in its performance of a vital public function in which all tax-payers of New Orleans share equal interest. It is an agency of city government, notwithstanding the self-perpetuating nature of the syndicate members. At the very least, all members of the plaintiff class are entitled to a Board allowing equal access to qualified caucasians and non-caucasians. Likewise are qualified non-caucasians as entitled as qualified caucasians to serious consideration when vacancies occur. The equal opportunity to participate in city management is the gravamen of this complaint, and the evidence as a whole establishes a denial of that right which inheres in a neutral scheme—not discrimination in its best sense, but in its most subtle.

The *Hawkins* rule dispenses with the need to prove discriminatory intent when municipal action burdens a racially-definable group. The defendants' discretionary leeway to appraise individual qualifications can hardly diminish that burden, and does not explain the racial homogeny of membership for the almost 100-year existence of the Board. Nor does the concept of "necessary" discrimination comport with the acknowledged availability of qualified non-caucasians and the testimony of some members that they could not recall even considering non-caucasians for appointment. Indeed, these facts conform this case to the very result decried in *Hawkins*: racial discrimination effected by the "arbitrary quality of thoughtlessness" rather than by conscious design. [1]

In the final analysis, the historic and continuing dominance of the Board by

---

1. It should be noted that the stipulation of qualified non-caucasians and the suggestion that no serious consideration was accorded them, combine to sufficiently distinguish this case from those in which percentage comparisons alone failed to establish racial discrimination. *See Mayor of the City of Philadelphia v. Educational Equality League,* 415 U.S. 800, 94 S.Ct. 1323, 39 L.Ed.2d 771 (1974); *Carter v. Jury Comm'n of Greene County,* 396 U.S. 320, 90 S.Ct. 518, 24 L. Ed.2d 549 (1970).

caucasian citizens must be placed in the context of a city that has a substantial non-caucasian population. There appears no possible justification to protect against constitutional challenge the Board's evident failure to consider, much less select, qualified citizens from that sector of the community. Rather, the failure to do so is both "unexplained and unexplainable." *NAACP v. Allen,* 340 F.Supp. 703, 705 (M.D.Ala.1972), *aff'd,* 493 F.2d 614 (5th Cir. 1974).

 In fashioning a remedy appropriate to cases such as this, the courts possess "not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Louisiana v. United States,* 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965). This court also is mindful of the Fifth Circuit's endorsement of affirmative, equitable relief in public employment cases which emerge from a history of official discrimination. *See NAACP v. Allen, supra; Morrow v. Chrisler,* 491 F.2d 1053 (5th Cir. 1974). To analogize such cases to the one at bar is simply to recognize the trial court's broad leeway in correcting longstanding discrimination, and, further, to erase any doubts about the constitutionality or availability of "affirmative hiring relief as a legitimate weapon in the federal chancellor's arsenal of remedial instruments . . . ." *NAACP v. Allen,* 493 F.2d at 618.

Accordingly, this court sees fit to echo —at least in part—the decree of relief in *Allen, supra,* which met with Fifth Circuit approval. We hereby order

1. that the defendants be enjoined from engaging in any action with respect to the filling of vacancies on the Board of Liquidation, City Debt, which action serves to discriminate against the plaintiff class on the basis of race.

2. that, further, the two most recent appointments to the Board be terminated as of June 10, 1975, as having been made in the last 15 year period, during which testimony at trial established no serious consideration was given to qualified non-caucasian citizens of New Orleans.

3. that, finally, the defendants advise the public in the appropriate manner of the Board's intention to appraise the qualifications of non-caucasians as well as caucasians with respect to filling the two new vacancies, and that the defendants in fact fill the vacancies on the basis of that good faith, discretionary appraisal.

Withheld is the awarding of attorney's fees as requested by counsel for the plaintiffs, inasmuch as the above relief is considered sufficient to remedy the injury to plaintiffs' class.

Let the Clerk prepare a Judgment.