The **INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS LODGE NO. 1194 et al.,** Plaintiffs,

v.

**SARGENT INDUSTRIES et al.,** Defendants.

No. C 71-260.

United States District Court, N. D. Ohio, W. D.

July 11, 1974.

See also, D.C., 368 F.Supp. 357.

Richard A. Betts, Findlay, Ohio, E. Thomas Maguire, Robison, Curphey & O'Connell, Toledo, Ohio, for plaintiffs.

Shumaker, Loop & Kendrick, Charles W. Peckinpaugh, Jr. and Robert G. Clayton, Jr., Doyle Lewis & Warner, Toledo, Ohio, for defendants.

## MEMORANDUM

WALINSKI, District Judge:

This cause came to be heard on cross-memoranda with respect to an award of attorney's fees in the action brought pursuant to 29 U.S.C., § 185(a) and (b), *inter alia.*

Traditionally, the American legal system has resisted any attempt to tax counsel fees as costs. At least one commentator suggests that that reluctance to grant legal fees to a successful party is unique in our system. *See,* Note, Attorney's Fees: Where Shall the Ultimate Burden Lie?, 20 Vand.L.Rev. 1216 (1967); Ehrenzwieg, Reimburse-

ment of Counsel Fees and the Great Society, 54 Calif.L.Rev. 792, 793 (1966). The Supreme Court, in affirming an award of attorney's fees in a case brought under the Labor-Management Reporting and Disclosure Act (29 U.S.C., § 412), has recently discussed the propriety of such an award. Cole v. Hall, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). In *Cole* the Court set out the exceptions to the general rule. They are:

(a) *Statutory Authorization*—Congress has, in some instances, specifically provided for the payment of attorney's fees to a successful litigant. *See*, Labor-Management Reporting and Disclosure Act, §§ 201(c) and 501(b), 29 U.S.C., §§ 431(c) and 501(b). *See also*, Clayton Act, 15 U.S.C., § 15; Communications Act of 1934, 47 U.S.C., § 206. In a comment in the University of Chicago Law Review, the author also lists instances of fee shifting when the defendant is forced to comply with an administrative agency. Comment, The Allocation of Attorney's Fees After Mills v. Auto-Lite Co., 38 U.Chi.L.Rev. 316, 318 n. 12 (1971); Packers and Stockyards Act, 7 U.S.C., § 210(f); Perishable Agricultural Commodities Act, 7 U.S.C., § 499g(b); Railway Labor Act, 45 U.S.C., § 153(p); Interstate Commerce Act, 49 U.S.C., § 16(2). *See, e. g.,* Yablonski v. United Mine Workers, 151 U.S.App.D.C. 253, 466 F.2d 424 (1972), cert. denied, 412 U.S. 918, 93 S.Ct. 2729, 37 L.Ed.2d 144 (1973) (Labor-Management and Disclosure Act); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal. 1972) (Department of Transportation Act, 49 U.S.C., § 1653(f)); Johnson v. Georgia Highway Express, Inc., 5 Cir., 488 F.2d 714, 716 (1974) (Title VII, Civil Rights Act of 1964 [42 U.S.C., § 2000e–5(k)]).

■ (b) *Class-Benefit Doctrine*—When a single plaintiff or a small group of plaintiffs successfully pursue litigation that accrues to the benefit of a larger group, the courts will often order that the cost of litigation, including attorney's fees, be deducted from the total recovery in order to equitably disperse those costs. *See, e. g., Cole, supra* 412 U.S. at 15, 93 S.Ct. 1943; Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391–392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); Sprague v. Ticonic National Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 83 L.Ed. 1184 (1939). Those cases had their genesis in the Supreme Court's recognition of the courts' general equity powers. Central Railroad and Banking Co. of Georgia v. Pettus, 113 U.S. 116, 28 L.Ed. 915 (1885); Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1881).

■■ (c) *General Equity Power*—Primarily utilized by courts where the losing party has engaged in behavior which indicates a necessity for sanctions, that is not necessarily a limiting requisite. The cases have been replete with language running from "(the litigants) have been subjected to discriminatory and oppressive conduct," Rolax v. Atlantic Coast Line R.R., 186 F.2d 473, 481 (4th Cir. 1950); and, "the willfulness inherent in the contemptuous act is a major consideration," In re Federal Facilities Realty Trust, 227 F.2d 657, 658 (7th Cir. 1955); to a finding that the defendant's behavior was "unreasonably and obdurately obstinate." *See*, Gates v. Collier, 349 F.Supp. 881 (N.D. Miss.1972), aff'd 489 F.2d 298 (5th Cir. 1973), and that the conditions maintained by those defendants were "philosophically, psychologically, physically, racially and morally intolerable," 349 F. Supp. at 892 (citing an interim report by the Mississippi State Planning Agency, the Law Enforcement Assistance Administration and the American Correctional Association). *See also*, Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970); Guardian Trust Co. v. Kan-

sas City Southern Ry., 28 F.2d 233 (8th Cir. 1928), rev'd on other grounds, 281 U.S. 1, 50 S.Ct. 194, 74 L.Ed. 659 (1929). There have been no charges, nor evidence, of bad faith on the part of these defendants. Such a showing is not dispositive, however. Legislatures, and courts, have become increasingly willing to grant attorney's fees to encourage implementation of particular social policies or to equalize the practical, financial leverage involved in litigation. *See generally,* Note, Allowance of Attorney Fees in Civil Rights Litigation Where the Action is Not Based on a Statute Providing for an Award of Attorney Fees, 41 Cin.L.Rev. 405 (1972). *See,* Lee v. Southern Home Sites Corp., 444 F.2d 143, 145 (5th Cir. 1971) (Fair Housing [42 U.S.C., § 1982]); Thomas v. Myers-Dickson Furniture Co., 479 F. 2d 740 (5th Cir. 1973); and Jones v. Seldon's Furniture Warehouse, Inc., 357 F.Supp. 886 (E.D.Va.1973) (Truth-in-Lending [15 U.S.C., § 1640(a)]); *See also,* Foster v. Irwin, 258 F.Supp. 709 (E.D.La.1966) (Fair Labor Standards [29 U.S.C., § 216(b)]). Probably the greatest number of cases in which the courts have allowed attorney's fees to successful litigants, absent specific statutory authorization, has been in those cases which have sought to implement the phrase "with all deliberate speed" contained in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), in regard to racial desegregation. *See, e. g.,* Newman v. Piggie Park Enterprises, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); *Southern Home Sites, Inc., supra* 44 F.2d at 146; Brewer v. School Board of the City of Norfolk, Virginia, 456 F.2d 943, 954 (4th Cir. 1972); Clark v. Board of Education of the Little Rock School District, 369 F.2d 661 (8th Cir. 1966); Bell v. School Board of Powhatan County, 321 F.2d 494 (4th Cir. 1963); Dyer v. Love, 307 F.Supp. 974 (N.D.Miss.1969); Cato v. Parham, 293 F.Supp. 1375 (E.D.Ark.), aff'd 403 F.2d 12 (8th Cir. 1968).

While an award of fees can certainly be justified under equitable principles, the Court cannot ignore the policy arguments which must be weighed against making such an award. *See,* Goodhart, Costs, 38 Yale L.J. 849 (1929). One author lists these as:

1) A litigant should not be penalized for utilizing socially approved methods of dispute resolution;

2) A reasonable fee would be difficult for the court to determine;

3) The essentially combative nature of litigation requires each party to furnish his own advocate; and

4) The award of fees would aggravate the already overcrowded condition of the courts.

Note, Awards of Attorney's Fees to Legal Aid Offices, 87 Harv.L.Rev. 411 (1973), *citing* Goodhart, *supra.* The careful exercise of judicial discretion in the award of counsel fees to a successful litigant can serve to promote a beneficial policy of encouraging litigation by those genuinely aggrieved but unable to undertake the ever-rising costs of court action. These plaintiffs attempting to survive, in face of escalating inflation, on fixed retirement benefits, represent a group least able to utilize the courts to protect their meager allowance in legal battle with the mega-corporation. Congress has recognized this problem and, in 1965, funded a national legal services program under Title II–A of the Economic Opportunity Act of 1964 (42 U.S. C., §§ 2781–2837) and specifically funded legal services offices in 1966 (42 U. S.C., § 2809(a)(3)). Awards, *supra* n. 3 at 411; *See also, generally,* 2 CCH Pov. L.Rep., ¶ 8020 (1972); Note, Neighborhood Law Offices, The New Wave in Legal Services for the Poor, 80 Harv.L. Rev. 805 (1967). Public defender offices have existed for many years to afford counsel to indigent criminal defendants, and the Supreme Court has been willing to recognize the constitutional rights of such defendants to have coun-

sel appointed to represent them. *See,* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *See also,* Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971). Those rights extend to appeals, Douglas v. California, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), and the quasi-criminal proceedings of juvenile and probation revocation hearings, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1967); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967). Unfortunately, these litigants fall into the non-criminal, non-law-reform class which has often been ignored while suffering an almost insurmountable financial disincentive to vindicate their rights. It is the opinion of the Court that the sound exercise of judicial discretion requires the taxing of attorney's fees as costs to the defendant herein.

The amount of those fees presents another, separate problem for judicial determination. Another question for judicial discretion, *See,* 6 J. Moore, Federal Practice, ¶ 54.77 (1972 rel.); Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714, 717 (5th Cir. 1974); Weeks v. Southern Bell Telephone and Telegraph Company, 467 F.2d 95 (5th Cir. 1972); Culpepper v. Reynolds Metals Company, 442 F.2d 1078 (5th Cir. 1971), the ABA Code of Professional Responsibility (DR 102–6, 1971 ed.) outlines, at (B) some factors to be considered in determining the reasonableness of a fee. They are:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) Whether the fee is fixed or contingent.

These plaintiffs have secured able and experienced counsel, who took this action, for a very reasonable contingent fee, knowing that the case would involve extended and detailed fact-finding. Those attorneys have been forced to forego other, remunerative pursuits while preparing and trying this action.

Defendants cite cases in which previously negotiated contingent fees were looked upon with disfavor when fees were ordered as part of plaintiff's recovery. *See, e. g.,* City of Detroit et al. v. Grinnell Corp. et al., 356 F.Supp. 1380 (S.D.N.Y.1972); State of Illinois et al. v. Harper & Row Publishers, Inc., 55 F. R.D. 221 (N.D.Ill.1972); Dumas et al. v. King, 157 F.2d 463 (8th Cir. 1946), *citing* Business Men's Assurance Co. of America v. Campbell, 18 F.2d 223 (8th Cir. 1927). While this Court will not accept, unquestioningly, a fee contract of any kind, be it a fixed fee, an hourly rate, or, as here, a contingent fee, if that fee is to be taxed as part of the final order, it cannot be ignored that such a fee arrangement is not at all uncommon. *See, e. g.,* Rosenfeld, etc., et al. v. Black, et al., 56 F.R.D. 604 (S.D.N.Y. 1972); Freeman v. Ryan et al., 133 U. S.App.D.C. 1, 408 F.2d 1204 (1968); McKittrick v. Gardner, 378 F.2d 872 (4th Cir. 1967). Detailed hourly time sheets are seldom kept when it is expected that recovery will have no relation to time expended. This litigation has extended over a period of over three years and has involved extensive discov-

ery and cross-country travel by the plaintiffs' counsel. It would be extremely difficult, if possible, to reconstruct any specific expenditure of time as well as further delaying this already protracted litigation. It therefore appearing to the Court that, although not necessarily bound by an agreement between plaintiffs and their counsel when taxing fees against the defendant, the arrangment here seems eminently reasonable and shall be the order of the Court.

An Order will be entered accordingly.