Clifford HENSLEY, Plaintiff,

v.

**UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUNDS, et al., Defendants.**

**Civ. A. No. 77–187.**

United States District Court,
E.D. Kentucky,
Lexington.

Jan. 6, 1984.

Hensley, Dunn & Ross, Horse Cave, Ky., for plaintiff.

UMWA Health & Retirement Funds, Washington, D.C., for defendants.

MOYNAHAN, Chief Judge.

This case involves a disabled miner's dispute over the eligibility standards applied to award health and pension benefits under the 1950 UMWA Benefit Plan and Trust, and the 1950 UMWA Pension Plan. These union welfare funds are irrevocable trusts established through collective bargaining by the National Bituminous Coal Wage Agreement, under the authority of Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5). This Act requires the Trustees of the Funds to administer the trust for the "sole and exclusive benefit of the employees." The Funds are maintained by per tonnage contributions to the trusts from employers signatory to the Bituminous Coal Wage Agreement.

The parties have submitted the case for decision on cross motions for summary judgment. The pleadings and affidavits establish the following material facts.

Plaintiff Clifford Hensley worked as a UMW coal miner until he became disabled due to pneumoconiosis. All of his employers were signatory to the National Bituminous Coal Wage Agreement and plaintiff held positions that were "classified" for UMWA pension purposes. However, during the final nine months of his working life (March, 1970—January, 1971), Hensley had a "non-classified" job as a Section Foreman for Westmoreland Coal Co., a signatory employer.

Based on the occupational disability caused by Black Lung, Hensley was awarded Workmen's Compensation for 1971 and 1972 by the State of Virginia. Hensley also received Social Security Disability in 1971 and Federal Black Lung benefits beginning in December, 1970.

On December 17, 1973, the plaintiff applied for the health care benefits granted to disabled miners under the UMWA 1950 Benefit Plan & Trust (hereinafter the Trust). To be eligible a claimant must: (a) Be under 55; (b) Become disabled before December 6, 1974; (c) Be eligible for Social Security Disability Insurance; and (d) Have 20 years of classified credited service, of which 10 years was with a signatory employer. Article II C(5) of the Trust. The parties have agreed by stipulation that Hensley meets all requirements, except the provision requiring 20 years of credited service. Consequently, the Trustees denied health benefits to Hensley.

Having exhausted all intra-Union remedies, Hensley seeks judicial review under the jurisdiction granted by the Labor Management Relations Act, 29 U.S.C. § 185, and other statutes.

Plaintiff complains that the Trustees denial of eligibility was erroneous and should be set aside as arbitrary and capricious and as a breach of the Trustees fiduciary duty; that the Trustees should be enjoined from applying the eligibility rules incorrectly and a declaration of plaintiff's eligibility be issued; that even if the Trustees correctly applied the eligibility requirements, then the Court should invalidate the disputed requirement as violative of the Labor Man-

agement Relations Act and the Employee Retirement Income Security Act. Hensley also asks for attorney fees, costs, and other appropriate relief.

The decisive issue in the case is whether the Trustees correctly determined that the plaintiff lacked the requisite 20 years of credited service. Credited service is calculated according to Article IV of the 1950 UMWA Pension Plan (hereinafter the Plan). Failure to meet the eligibility standards for health care benefits will ultimately defeat any claim plaintiff has to UMWA pension benefits. The defendant Trustees have stipulated that in accordance with Article IV B(1) of the Plan, the plaintiff has 18¼ years of credited service with a signatory employer. From this starting point, the plaintiff makes two claims for additional credited service.

First, an additional one quarter year is claimed for both 1946 and 1947. These two quarters credit were denied due to inadequate proof of hours or earnings. Another quarter year was claimed for 1960, but denied based on earnings records obtained from the Social Security Administration. Plaintiff argues that determination of these disputed credits is a factual issue, and as such, inappropriate for summary judgment. The defendant asserts that the court should uphold the Trustees denial of these credits, as a matter of law, if the Trustees decision was supported by substantial evidence. The defendants submitted evidence in support of their decision, but the plaintiff has rested on the allegations in his pleadings. Nevertheless, the issue is largely inconsequential, since granting the three quarters would increase the plaintiffs credited service to only 19 years.

Most important is plaintiff's second assertion that he is entitled to a year of service credit for each year he received Workmen's Compensation. Recognition of credited service for Workmen's Compensation awards is provided by two separate Plan provisions, each containing specific conditions. The dispute is over which provision applies to plaintiff.

Plaintiff contends that he is entitled to two years of non-signatory credit under Article IV A(3) which provides:

## "ARTICLE IV—CREDITED SERVICE

### A. *Nonsignatory Service*

Subject to the limitations in section C of this Article IV, credited service is a period during which the participant meets the requirements of subparagraphs (1), (2), (3), (4), or (5) below. Any credited service shall be nonsignatory service unless it qualifies as signatory service pursuant to Article IV(B) hereof.

(3) A participant shall receive credit for a year of service for any year in which he received state workmen's compensation payments pursuant to an award as a result of an occupational disease or injury sustained in the mine while regularly employed in a classified job under the bituminous coal wage agreement then in effect, provided, in the case of occupational disease, the participant had been so employed by an Employer signatory to the Wage Agreement then in effect for at least ten (10) years after May 28, 1946. Credit shall be given up to a maximum of four (4) years service credit from date of injury, or from the date of last employment in case of occupational disease provided the participant did not work regularly during the compensable period."

Defendants argue that since Hensley worked for a signatory employer any service credit date must be governed by Article IV B(2) on signatory service.

### "B. *Signatory Service*

Credited signatory service is:

(1) Service as defined in paragraph A(3) hereof during which a participant worked, after May 28, 1946, as an employee in a classified job for an Employer signatory to the bituminous coal wage agreement then in effect.

(2) Service as defined in paragraph A(3) hereof during which a participant received state workmen's compensation payments if such payments are pursuant

to an award as a result of an occupational disease or injury awarded after May 28, 1946, and if the participant was last regularly employed prior to such service as an employee in a classified job for an Employer signatory to the bituminous coal wage agreement then in effect."

In application Article IV B(2) expressly conditions signatory credit for workmen's compensation on the participant holding a classified job prior to the workmen's compensation award. Because the plaintiff was last employed in a non-classified Foreman's job, defendants argue that plaintiff can receive no additional credit based on the award.

The Plan defines Credited Service to mean "signatory and non-signatory service determined pursuant to Article IV." This allows years spent with different employers to be cumulated. The plaintiff claims credit for workmen's compensation under the non-signatory provisions although he worked for a signatory employer at all relevant times. Plaintiff's argument is based on the definition of non-signatory service set out in Article IV A: "Any credited service shall be non-signatory unless it qualifies as signatory service pursuant to Article IV B(2) hereof." The defendant Trustees refused to give any credit based on plaintiff's workmen's compensation because the award was derived from signatory employment and under Article IV B(2) no credit was allowable due to the condition on last employment. Plaintiff deems this refusal arbitrary and capricious and contrary to the definition of non-signatory service.

Both plaintiff and defendants argue their constructions of the Plan in a bold and conclusive manner. Plaintiff urges Article IV A(3) treatment by negative implication and because of equitable considerations. Defendants urge Article IV B(2) treatment largely because the Trustees' decisions are entitled to "great deference".

The joint requirements of (a) 20 years of credited service, coupled with (b) 10 years of employment by a contributing signatory employer, provide the only reason for a signatory/non-signatory distinction. The Article IV A definition (Any credited service shall be nonsignatory unless it qualifies as signatory service pursuant to Article IV B hereof.) relied on by plaintiff, indicates that service credit may be given which applies to the 20 year requirement, however only service which meets the more strict standards of Article IV B can be applied to the 10 year requirement. Consequently, the distinction operates to foreclose claimants having 20 years of cumulative service, but who lack the required 10 years of signatory employment.

Non-signatory service credit is more liberally provided for in the Plan. Article IV allows credited service for (1) service after 1936, including years where work records are unavailable; (2) service before 1937; (3) for occupational disability awards; (4) for employment as a Union representative; or (5) credit for war service.

Article IV B signatory credit is restricted to (1) actual years worked in a union mine, or (2) credit for occupational disability awards if the claimant was "last regularly employed .... as an employee in a classified job for an Employer signatory."

Defendants argue that it is reasonable to consider an individual's last employment because it "guarantees that credit will not be given for awards arising out of non-classified employment." (Defendants' reply to plaintiff's cross motion, p. 5.) However reasonable this approach may be, the Trustees' denial of non-signatory credit for plaintiff's workmen's compensation award effects a disfavorable forfeiture to a miner having substantial signatory service and no non-union employment.

No Plan provision requires that credited service be determined exclusively under either ¶ A or ¶ B of Article IV. Clearly these two provisions overlap in their coverage and, years of signatory and non-signatory service may be aggregated. Assuming the plaintiff needed signatory credit to meet the 10 year requirement, then his years of workmen's compensation would not qualify him, because of the "last regularly employed" condition in Article IV B(2). In fact

the plaintiff has sufficient signatory service and Article IV A(3) grants him non-signatory credit for the workmen's compensation awarded for his occupational disability. This provision requires that the award be the "result of an occupational disease or injury sustained in the mine while regularly employed in a classified job", and thereby the Fund is protected from claims arising after the individual has worked in another job. Plaintiff submitted diagnostic proof that his Black Lung condition was the result of working as a miner in a signatory coal mine, prior to becoming a Section Foreman.

■ Therefore, the Trustees' denial of non-signatory service credit based on an interpretation not supported by the express provisions of the Plan was incorrect. The only remaining question is one of the remedy under the applicable standard of review.

Under prevailing law, the Court must apply the arbitrary and capricious standard in reviewing the Trustee's decision. The defendants contend that the Trustees' interpretation of the Plan provisions was reasonable and that "it is for the trustees, not judges, to choose between various reasonable alternatives." *Roark v. Lewis*, 401 F.2d 425, 429 (D.C.Cir.1968).

The Trustees' determination of plaintiff's credited service exclusively under the signatory service provisions and without regard to any non-signatory entitlement is deemed arbitrary by plaintiff. Plaintiff contends that the Trustees cannot limit eligibility by a technical reading of the Plan. Instead, he urges that the Plan should be construed in favor of the intended beneficiaries.

The Trustees' decision may be invalidated under the arbitrary and capricious standard, if the denial of benefits was irrational or not based on the relevant Plan provisions. However, where the interpretation of an eligibility requirement is deemed reasonable and supported by substantial evidence, the reviewing Court should not find the Trustees' interpretation to be arbitrary or capricious. *Haynes v. Lewis*, 298 F.Supp. 331 (D.D.C.1969).

Alternatively, if the Trustees interpretation is upheld as lawful, then the plaintiff asks the Court to invalidate the "last employed in a classified job" requirement. Plaintiff cites persuasive authority in which inequitable conditions on benefits eligibility were invalidated. Both *Roark v. Boyle*, 439 F.2d 497 (D.C.Cir.1970) and *Patterson v. UMWA Welfare & Retirement Fund*, 346 F.Supp. 11 (E.D.Tenn.1971) ruled that a trustees' resolution requiring an applicant to have worked his last year of employment with a signatory employer was invalid as arbitrary and inequitable when applied to exclude miners with substantial signatory experience. In *Pete v. UMWA Welfare & Retirement Fund of 1950*, 517 F.2d 1275 (D.C.Cir.1975), en banc, again repudiated the "last year" rule saying that it could not validly be the exclusive criterion for rewarding "substantial signatory service", but the Court approved the reasonableness of a total of five signatory years service criterion. However, *Pete* was a series of class actions and the rulings plaintiff cites were largely based on the inequity of the "last year" requirement as it applied to all miners. The Hensley case before this Court presents a unique situation dissimilar from the cases plaintiff cites. Although the Court has power to invalidate unfair eligibility standards, the provision here in issue seems to serve a reasonable Trust purpose.

■ The Plan requires that a miner be last employed in a classified job before he can receive *signatory* credit for a workmen's compensation award. The provision relied on to deny Hensley's claim is not a discriminatory or exclusive criterion applied to deny benefits. As applied to Hensley, the requirement works a hardship, but as applied to all miners it seems fair and reasonable, in light of Trust purposes. Since the requirement is presumed valid, Hensley can be granted relief only if the Trustees' interpretation of the signatory and non-signatory provisions is found to have been arbitrary and capricious.

The Court finds that the trustee's interpretation of the signatory and non-signatory provisions is arbitrary and capricious under the facts of this case. The plaintiff suffering from Black Lung after 18¼ years of signatory service undertook to work in a "non-classified job" as a section foreman for Westmoreland Coal Company, a signatory employer, during the last nine months of his working life. He was unable to discharge the duties either of his regular employment or of this job and finally retired, drawing both Federal Black Lung Benefits and Social Security Disability. The employment was really "make work" which he desired to do and which the company provided him as a long-time valued employee who was no longer able to work as a miner. If he had elected to quit when he first became disabled, his Workmen's Compensation Benefits would have carried him past the twenty (20) years of credited service requirement and he would be eligible for the benefits which he seeks. He should not be penalized because he tried to continue to work in a less physically demanding position and his employer attempted to accommodate his commendable effort. The Court will this day enter a Judgment sustaining the plaintiff's motion for Summary Judgment.

Finally, plaintiff's complaint asks for attorney fees. It appear that even if plaintiff prevails, fees should not be granted under the "American rule". The subject of attorney's fees in suits under the Labor Management Relations Act are discussed in *International Ass'n of Machinists & Aerospace Wkrs. v. Sargent Industries*, 63 F.R.D. 623 (N.D.Ohio 1974).